[Cite as *State v. Marshall*, 2025-Ohio-3132.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                   :          APPEAL NO.   C-240601
                                            TRIAL NO.    B-0506040-A
    Plaintiff-Appellee,      :

vs.                              :

JAMES MARSHALL,                  :
                                                  *JUDGMENT ENTRY*
    Defendant-Appellant.     :


This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.


**To the clerk:**

**Enter upon the journal of the court on 9/3/2025 per order of the court.**


**By:**_____
       **Administrative Judge**

[Cite as *State v. Marshall*, 2025-Ohio-3132.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240601 |
| | | TRIAL NO. B-0506040-A |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | |
| | | *O P I N I O N* |
| JAMES MARSHALL, | : | |
| | | |
| Defendant-Appellant. | : | |


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: September 3, 2025


*Connie M. Pillich*, Hamilton County Prosecuting Attorney, and *Jon Vogt*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*James Marshall*, pro se.

**ZAYAS, Presiding Judge.**

{¶1} Defendant-appellant James Marshall appeals the judgment of the Hamilton County Court of Common Pleas denying his application for postconviction DNA testing. Because the common pleas court did not abuse its discretion in finding that DNA testing would not be outcome determinative, we affirm the lower court's judgment.

## I. Factual and Procedural History

{¶2} Following a jury trial in 2006, Marshall was convicted of murder in connection with the shooting death of Junis Sublett. At trial, eyewitnesses testified that someone in a green truck had fired a gun out of the front passenger-side window towards Sublett, who was hit in the head and fell to the ground. The driver of the green truck then drove off, running over Sublett's body. Eyewitnesses identified Jason Jones as the driver of the truck and Marshall as the passenger. Jones is the long-time boyfriend of Marshall's sister. Marshall and Jones both fled Ohio after the shooting but were later apprehended in North Carolina where they had been living under aliases. Upon return to Ohio, they were tried separately.

{¶3} At Marshall's trial, Marshall admitted that he had been sitting in the front passenger seat of the green truck but testified that he had been bent over, with his head between his knees, when Sublett was shot by the driver of the truck. Marshall explained that he and the driver had been at the location to sell drugs to Sublett, but that Sublett had robbed them. Marshall testified that the driver shot Sublett after he had exited from the car with the stolen drugs. At his trial and at Jones's trial, Marshall testified that Jones was not the driver of the truck and instead it was someone that Marshall knew as "DC."

{¶4} A shell casing was found at the scene, but it was not tested for DNA at

the time of the trial. The casing matched ammunition found in Jones's apartment.

{¶5} Marshall unsuccessfully challenged his murder conviction in his direct appeal and in postconviction motions filed in 2006, 2010, and 2020. *State v. Marshall*, 2008-Ohio-955 (1st Dist.), *appeal not allowed*, 2008-Ohio-3369 ("*Marshall I*"); *State v. Marshall*, No. C-080385 (1st Dist. Jan. 28, 2009); *State v. Marshall*, No. C-070054 (1st Dist. Dec. 19, 2009); *State v. Marshall*, No. C-110054 (1st Dist. Dec. 9, 2011); *State v. Marshall*, 2021 Ohio App. LEXIS 2223 (1st Dist. June 30, 2021), *appeal not accepted*, 2021-Ohio-0993.

{¶6} Since his conviction for murder and Jones's conviction for involuntary manslaughter, Marshall has now alleged that he lied at trial and that Jones actually was the driver of the truck and the one who shot Sublett. He explained that his family had begged him not to implicate Jones in the crimes, because he had children with Marshall's sister.

{¶7} In August 2024, Marshall applied for postconviction DNA testing on the shell casing found at the crime scene. In support of his application, Marshall noted that the shell casing had not been tested for DNA, that he had consistently maintained that he was not the shooter, that no physical evidence tied him to the shooting, and that the shell casing admitted into evidence was the same type as the ammunition found at Jones's apartment. The common pleas court denied the application as "not well-taken."

{¶8} On appeal from that judgment, this court reversed the lower court's judgment and remanded the matter for the court to state its reasons for the denial of the application as required by R.C. 2953.73(D). *State v. Marshall*, 2024-Ohio-3262, ¶ 9 (1st Dist.). On remand, the common pleas court found that testing of the shell casing would not be outcome determinative. In making that finding, the common

pleas court noted that this court, in Marshall's direct appeal, had held, in overruling Marshall's challenge to the manifest weight of the evidence, that the evidence presented at trial "permitted a conclusion that would have excluded the driver as the shooter." *Marshall I*, 2008-Ohio-955, at ¶ 56 (1st Dist.). Specifically, this court noted that based on the location of Sublett and the truck when Sublett was shot, the driver would have had to fire through the front windshield, which was not damaged, to strike Sublett. We also noted that the speed at which the driver of the truck left the scene immediately after Sublett had been shot supported the State's theory at trial that the passenger, and not the driver, was the shooter. *Id.*

**{¶9}** Marshall now appeals the denial of his application.

## II. Analysis

**{¶10}** In a single assignment of error, Marshall argues that the common pleas court abused its discretion by denying his application for postconviction DNA testing. We review a trial court's decision granting or denying an application for DNA testing for an abuse of discretion. R.C. 2953.74(A); *State v. Smith*, 2021-Ohio-1389, ¶ 4 (1st Dist.), citing *State v. Conner*, 2020-Ohio-4310, ¶ 12 (8th Dist.). "A court exercising its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority constitutes an abuse of discretion." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. An application for postconviction DNA testing is properly denied where the results would not be outcome determinative. *State v. Buehler*, 2007-Ohio-1246, ¶ 37.

**{¶11}** Postconviction DNA testing is governed by R.C. Ch. 2953. When considering an application

> [t]he trial court may "accept" an eligible inmate's application for DNA
> testing only if the following factors are present: (1) biological material
> was collected from the crime scene or the victim(s), and the parent

5

sample of that biological material still exists; (2) the parent sample of the biological material is sufficient, demonstrably uncorrupted, and scientifically suitable for testing; (3) the identity of the perpetrator of the charged offense was an issue at the inmate's trial; (4) a defense theory at trial was such that it would permit a conclusion that an "exclusion result would be outcome determinative"; and (5) "if DNA testing is conducted and an exclusion result is obtained, the results of the testing would be outcome determinative."

*State v. Emerick*, 2007-Ohio-1334, ¶ 15 (2d Dist.), *overruled in part on other grounds by State v. Wilson*, 2024-Ohio-4712 (2d Dist.); R.C. 2953.74(C). "If any of the factors listed in R.C. 2953.74(C) is not satisfied, the court is precluded from accepting the application." *Id.* at ¶ 16.

*Testing would not be outcome determinative*

**{¶12}** R.C. 2953.71(L) provides that "outcome determinative" means that had the results of DNA testing of the subject offender been presented at the trial of the subject offender requesting DNA testing and been found relevant and admissible with respect to the felony offense for which the offender is an eligible offender and is requesting the DNA testing, and had those results been analyzed in the context of and upon consideration of all available admissible evidence related to the offender's case . . ., there is a strong probability that no reasonable factfinder would have found the offender guilty of that offense[.]

**{¶13}** Marshall contends that if Jones's DNA is found on the shell casing and his is not, then this proves Jones was the one who shot Sublett. We disagree. Even if Jones's DNA is found on the shell casing, this must be considered in conjunction with

all the evidence presented at trial. Here, the evidence presented at trial, i.e., the location of the truck and Sublett's body at the time he was shot, demonstrates that for the driver to have hit the victim, the driver would have had to shoot through the front windshield. *See Marshall I,* 2008-Ohio-955, at ¶ 56-57 (1st Dist.). But the front windshield was not damaged, and two eyewitnesses said that the gun was sticking out of the front passenger-side window when it was fired. Further, given Marshall's admission that he was in the truck when the shooting occurred, even if another person's DNA is on the shell casing, at the most that proves that someone else may have loaded the gun; it does not exclude Marshall as the shooter in light of the other evidence presented at trial. *See State v. Sells*, 2017-Ohio-987, ¶ 10 (2d Dist.) (affirming denial of application for postconviction DNA testing where, even if testing of the murder weapon and victim's pants had yielded a result establishing the presence of someone else's DNA, it would not have been outcome determinative, but rather would "establish only that someone else had touched the bat and had contact with the victim").

{¶14} Because Marshall has not demonstrated that DNA testing would be outcome determinative, we hold that the common pleas court did not abuse its discretion in denying Marshall's application for postconviction DNA testing. The single assignment of error is overruled.

### III. Conclusion

{¶15} Having overruled Marshall's single assignment of error, we affirm the lower court's judgment.

Judgment affirmed.

**BOCK** and **MOORE, JJ.,** concur.

7